# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CC-02031-COA

CHESTER A. LEIGH                                                                    APPELLANT

v.

ABERDEEN SCHOOL DISTRICT                                                           APPELLEE

DATE OF JUDGMENT:            11/08/2013
TRIAL JUDGE:                 HON. JACQUELINE ESTES MASK
COURT FROM WHICH APPEALED:   MONROE COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:      RANDOLPH WALKER
ATTORNEY FOR APPELLEE:       JOHN SIMEON HOOKS
NATURE OF THE CASE:          CIVIL - OTHER
TRIAL COURT DISPOSITION:     UPHELD APPELLANT'S TERMINATION
DISPOSITION:                 AFFIRMED - 05/17/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE GRIFFIS, P.J., ISHEE AND FAIR, JJ.

### ISHEE, J., FOR THE COURT:

¶1.     In 2012, Chester Leigh was terminated from his position as the superintendent of the Aberdeen School District (the District). He appealed his termination to the Monroe County Chancery Court. The chancery court upheld the termination, and Leigh now appeals, claiming he was not afforded certain procedural rights and that his termination was not supported by substantial evidence. Finding no error, we affirm.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     In July 2011, Leigh, in his capacity as superintendent, gave a presentation to the Aberdeen School District Board of Trustees (the Board) regarding the creation of a security

force for the District. In this presentation, Leigh discussed the need for uniforms, firearms, and other items necessary to properly equip the security force. Although he mentioned transportation during his presentation, Leigh did not go into detail regarding any proposed procurement of vehicles. The Board authorized Leigh to look into creating and equipping the security force, but did not authorize him to obtain any vehicles.

¶3. Following this meeting, Leigh instructed Phonecia Witherspoon, the District's chief financial officer at the time, to look into purchasing vehicles for the security department. After a plan to secure former Mississippi Department of Transportation (MDOT) vehicles fell through, Witherspoon contacted an automobile dealership in Amory and entered into lease negotiations for two Ford Edge sport-utility vehicles. At no point did Witherspoon procure two or more bids on the vehicles, even though she was aware that she was required to do so by statute. Witherspoon believed that the Board had authorized attainment of the vehicles as an emergency action, despite the fact that neither Leigh nor the Board had specifically stated as such. Regardless, Leigh took responsibility for Witherspoon's leasing of the vehicles.

¶4. Witherspoon signed the lease for the vehicles on September 8, 2011, when the vehicles were delivered to the District. She executed a check for $21,000 at the time of delivery and notified Leigh of her actions, even though she knew that the Board had not approved a voucher for procurement of the vehicles. The Board was not made aware of the lease until late September 2011, when various members of the community commented on or inquired about the new vehicles. After the Board initiated an investigation, it determined that

2

Leigh had violated the statute and District policy relating to leasing the vehicles. On December 15, 2011, the Board voted 3-2 to terminate Leigh's employment for "insubordination and abuse of authority by violating [B]oard policy . . . and Mississippi Code Annotated 31-7-13(b)."

¶5. Pursuant to his rights under the Education Employment Procedures Law (EEPL), Leigh requested a hearing on December 19, 2011. The hearing was held over a three-day period – on January 26, 2012, February 15, 2012, and March 9, 2012, respectively. Nathaniel Armistad served as the hearing officer. Both Leigh and the District presented witnesses at the hearing. The preliminary version of Armistad's report was submitted to the Board on April 5, 2012, and the final report was submitted on April 11, 2012.

¶6. On April 20, 2012, the Governor of Mississippi proclaimed a state of emergency in the District based on the recommendation of the Mississippi Department of Education. Robert Strebeck was appointed conservator over the District, thereby replacing Armistad as the person overseeing Leigh's proceedings.

¶7. On May 10, 2012, Leigh made a final statement before Strebeck. On May 29, 2012, Strebeck upheld Leigh's termination. In doing so, Strebeck found that upon examination of transcripts, the hearing officer's report, and Leigh's final statement, there was substantial and credible evidence that Leigh failed to comply with applicable statutes and District policy.

¶8. Leigh filed a notice of appeal to the chancery court on June 12, 2012. After briefing and oral argument, the chancery court remanded Strebeck's decision for an additional hearing on April 4, 2013. The chancery court questioned whether Strebeck had the authority to

uphold the Board's decision, whether Strebeck's decision regarding Leigh's termination was timely delivered, and whether Strebeck sufficiently explained his reasons for upholding the Board's decision. Based on these irregularities, the chancery court held that Leigh suffered prejudice warranting remand for a further hearing pursuant to the EEPL.

¶9. However, following the chancery court's April 4, 2013 order, Strebeck made no effort to convene a hearing. Leigh eventually filed a motion to enforce the chancery court's order on May 20, 2013. Nine days later, Strebeck submitted a more detailed decision upholding the Board's termination of Leigh. In light of this modified decision, the chancery court dismissed Leigh's motion to enforce the order as moot. Leigh again appealed Strebeck's decision to the chancery court, which upheld the decision. Aggrieved, Leigh appeals.

## DISCUSSION

### I.     Whether Strebeck failed to comply with the April 4, 2013 order.

¶10.    Leigh first alleges that because Strebeck failed to hold a new hearing under the guidelines of the EEPL following the chancery court's April 4, 2013 order, this Court should reverse the decision of both Strebeck and the chancery court, and reinstate Leigh. The relevant appeals provisions of the EEPL read as follows:

> The scope of review of the chancery court in such cases shall be limited to a review of the record made before the school board or hearing officer to determine if the action of the school board is unlawful for the reason that it was:
>
> > (a)     Not supported by any substantial evidence;
> >
> > (b)     Arbitrary or capricious; or
> >
> > (c)     In violation of some statutory or constitutional

4

right of the employee.

Miss. Code Ann. § 37-9-113(3) (Rev. 2013). On appeal, the same standard applies, and this Court will not disturb the Board's decision if there is "substantial credible evidence undergirding the . . . [B]oard's findings of fact." *Noxubee Cty. Bd. of Educ. v. Givens*, 481 So. 2d 816, 819 (Miss. 1985).

¶11. When this case was first brought before the chancery court, Leigh argued, as he does now, that Strebeck's decision was not delivered to him in a timely manner and that the decision was not supported by substantial evidence. The chancery court initially agreed, finding that there was an issue of timeliness and that Strebeck's decision was not specific enough to determine the basis of Leigh's termination. In its order dated April 4, 2013, the chancery court remanded Strebeck's decision for an additional hearing "in the manner set forth in Section 37-9-111, ensuring compliance with the time frames set forth therein as well as rendering a final determination which states the precise basis for Leigh's termination."

¶12. The EEPL requires the Board to notify an employee of its decision regarding his employment within thirty days of the conclusion of the hearing if it is conducted by a hearing officer. Miss. Code Ann. § 37-9-111(5) (Rev. 2013). The record indicates that the parties considered that the hearing was concluded when the hearing officer submitted his finalized report on April 11, 2012. As such, the Board's decision on May 29, 2012, would have been untimely under normal circumstances.

¶13. However, the declaration of a state of emergency in a school district suspends the applicability of the EEPL in that district. Miss. Code Ann. § 37-9-103(2) (Rev. 2013). When

5

the Governor declared a state of emergency in the District and appointed Strebeck as its conservator, the thirty-day-notice provision was no longer applicable.

¶14. While Strebeck's May 29, 2012 decision made no mention of the suspension of the EEPL's notice requirements, his May 29, 2013 decision did. In the latter decision, Strebeck explicitly raised Mississippi Code Annotated section 37-9-103(2) to refute Leigh's contention that he was not given adequate notice. This decision noted that Strebeck met with Leigh on May 10, 2013, weeks before providing his final decision – a level of due process above what Strebeck was legally obligated to provide. We agree with the chancery court and Strebeck, and find that his discussion of section 37-9-103(2) was sufficient to address and rectify the procedural deficiencies noted in the first decision.

¶15. Leigh further contends that Strebeck's May 29, 2013 decision did not comply with the chancery court's order because Strebeck failed to hold a new hearing under the guidelines of section 37-9-111. While it is not argued by either party, it is questionable whether the chancery court had the authority to force these guidelines upon Strebeck since the state of emergency made them inapplicable. Nevertheless, to his credit Strebeck reviewed multiple volumes of hearing reports and resubmitted his decision with greater detail and specificity pursuant to the guidelines of section 37-9-111.

¶16. While the language of the April 4, 2013 order requires the use of section 37-9-111 as procedural guidelines, it does not, as suggested by Leigh, require a completely new hearing from beginning to end. There is nothing in the record to suggest that the final report was somehow deficient, and nothing to suggest that a new hearing would yield any different or

6

new evidence or testimony. Strebeck's efforts of reading through the compiled testimony and his subsequent production of a more detailed decision regarding Leigh's termination were more than sufficient to meet the requirements of the chancery court's April 4, 2013 order. This is only further supported by the fact that the very same chancery court found such efforts sufficient when it denied as moot Leigh's motion to compel a hearing.

¶17. Finally, Leigh's argument that the chancery court's April 4, 2013 order held that Strebeck's decision was unsupported by substantial evidence mischaracterizes the nature of the order. The chancery court did not find that the record was insufficient to support Strebeck's decision. Rather, it found that the reasoning provided by Strebeck in his May 29, 2013 decision was not "expressed with sufficient specificity to ascertain the basis for Leigh's termination."

¶18. A reviewing court must be able to understand why an agency ruled as it did in order to determine whether the agency's decision was supported by substantial evidence or was arbitrary or capricious. *Anadarka Petroleum Corp. v. State Oil & Gas Bd. of Miss.*, 99 So. 3d 109, 111 (¶5) (Miss. 2012). Because Strebeck offered a minimal, one-page explanation for his conclusions in his May 29, 2013 decision, the chancery court remanded the case for a new hearing so that Strebeck might clarify his position – not so that he might uncover new information. As such, Strebeck's May 29, 2014 decision, which was five-pages filled with excerpts from the hearing reports that validated his decision, rectified the deficiencies in his earlier decision. These issues are without merit.

**II. Whether Strebeck's decision was supported by substantial evidence.**

¶19. Leigh also challenges the chancery court's determination that Strebeck's decision was supported by substantial evidence and was not arbitrary or capricious. Again, based on the relevant appeals provisions, this Court reviews the decision of the Board and Strebeck by looking to the hearing report to determine if the decision was (1) supported by substantial evidence, (2) arbitrary or capricious, or (3) in violation of some statutory or constitutional right of the employee. Miss. Code Ann. § 37-9-113(3). If substantial evidence exists supporting Strebeck's termination decision, this Court will not reverse. *See Merchant v. Bd. of Trustees*, 492 So. 2d 959, 962 (Miss. 1986). Substantial evidence "affords a substantial basis of fact from which the fact in issue can be reasonably inferred." *Amite Cty. Sch. Dist. v. Floyd*, 935 So. 2d 1034, 1039 (¶7) (Miss. Ct. App. 2005). Further, substantial evidence amounts to "more than a mere scintilla of evidence, and does not rise to the level of a preponderance of the evidence." *Id.*

¶20. Leigh alleges that there are insufficient facts available in the hearing report to justify Strebeck's May 29, 2014 decision. We disagree. In his modified May 29, 2014 decision, Strebeck found that there was substantial evidence for Leigh's termination based on "Leigh's failure to comply with District policy and state law in regard to [obtaining] the vehicles" as well as his failure to "properly supervise his staff member . . . with regard to the acquisition of the vehicles." In support of these contentions, Strebeck cited testimony from the three Board members who voted to terminate Leigh. The testimony from the Board members indicates that Leigh did not have authority to lease the vehicles, did not obtain two bids on the acquisition of the vehicles, and did not inform the Board of the lease. Board member

8

Royce Stephens testified that there was no money for the vehicles in the budget, and that state statutes and District policies dictate that multiple bids and Board approval were required before leasing the vehicles. Even the two Board members who voted against terminating Leigh recognized that the Board had not given Leigh authority to obtain bids for the vehicles.

¶21. Although Leigh contends that he was given implicit authority to acquire the vehicles for a campus police force, the testimony of the Board members makes it clear that such authority was not intended. Even if such authority was implied, it is uncontested that Leigh failed to solicit bids for the vehicles despite Mississippi Code Annotated section 31-7-13 (Supp. 2015) explicitly requiring such procedures. As such, Leigh's actions amounted to a breach of both statutory law and District policy, giving the Board more than ample reason to terminate his employment with the District.

¶22. Strebeck also found that Leigh's inadequate supervision of his staff member in leasing the vehicles was sufficient to warrant termination. In support of this contention, Strebeck noted Royce Johnson's testimony that the superintendent, as the chief financial officer of the District, is supposed to be informed of all money expenditures and is in charge of properly overseeing and authorizing expenditures. When Leigh failed to properly supervise his staff member in leasing the vehicles, he failed to adequately perform his duties of properly overseeing and controlling the expenditures within the District. While it is admirable that Leigh took responsibility for his staff member's mistakes, these mistakes still equate to his failure to properly supervise employees. As such, we find that Strebeck's decision sufficiently puts forth specific reasons for Leigh's termination that are supported by

testimony in the hearing report. This issue is meritless.

¶23. **THE JUDGMENT OF THE MONROE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR. JAMES, J., NOT PARTICIPATING.**